# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Garrick v. Mesirow Financial Holdings, Inc.*, 2013 IL App (1st) 122228

---

| | |
|---|---|
| Appellate Court Caption | GEORGE GARRICK and LAINIE GARRICK, Plaintiffs-Appellants, v. MESIROW FINANCIAL HOLDINGS, INC., and MESIROW INSURANCE SERVICES, INC., Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-2228 |
| Filed | July 26, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly entered summary judgment for plaintiffs' former insurance producers in a professional negligence action alleging that defendants negligently excluded a pair of earrings from coverage, where the earrings were covered under a policy issued through defendants in 2004 when one of the earrings was lost and a claim was filed and paid, the earrings were then deleted from the list of items covered by one of defendant's officers without plaintiff's consent, and when plaintiffs renewed their policy through another producer without having been informed that the loss and replacement required a separate listing of a new "item" for the replacement earrings, there was no coverage when both earrings were lost in 2009, and under those circumstances, defendants' duty did not extend beyond the policy they provided and their actions did not proximately cause plaintiffs' loss when the second claim was denied. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-13795; the Hon. Bill Taylor, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Robert A. Chapman and Shannon T. Smith, both of Chapman Spingola, LLP, of Chicago, for appellants. |
|---|---|
| | Michael J. Meyer and Jeremy N. Boeder, both of Tribler, Orpett & Meyer, P.C., of Chicago, for appellees. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion. Presiding Justice Lampkin and Justice Reyes concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiffs George Garrick and his wife, Lainie Garrick, brought a professional negligence action against their previous insurance producers,[1] defendants Mesirow Financial Holdings, Inc., and Mesirow Insurance Services, Inc. Defendants moved to dismiss plaintiffs' complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)). The trial court granted the motion to dismiss for failure to state a cause of action with leave to replead. Plaintiffs then filed their "First Amended Complaint" (amended complaint), and defendants filed a second motion to dismiss for failure to state a cause of action pursuant to section 2-615, which the trial court granted with prejudice. Plaintiffs now appeal the trial court's order dismissing the case with prejudice.

¶ 2    Plaintiffs claim that the trial court erred in dismissing the amended complaint, which alleges that defendants' negligence in excluding a pair of expensive earrings from coverage in a previous insurance policy proximately caused their damages. For the following reasons, we affirm.

¶ 3                                  BACKGROUND
¶ 4                                  I. The Parties
¶ 5    Plaintiffs are individuals who now reside in California but previously resided in Illinois. Defendant Mesirow Financial Holdings, Inc. (MFH), a Delaware corporation, is a diversified financial insurance services firm with its headquarters in Chicago, Illinois. Defendant

---

[1]The words insurance "broker" and insurance "producer" are used interchangeably in this case. An insurance producer is a "person required to be licensed under the laws of this State to sell, solicit, or negotiate insurance." 215 ILCS 5/500-10 (West 2004). The insurance producers here are defendants' companies.

Mesirow Insurance Services, Inc. (MIS), is a wholly owned subsidiary of MFH.[2] According to plaintiffs' amended complaint, MIS's website states that MIS is one of Chicago's largest independent insurance consultants and is among the top 25 in the nation.

¶ 6                                    II. Insurance Coverage

¶ 7        Plaintiffs' amended complaint alleges that, between approximately 2002 and 2005, plaintiffs procured the services of defendants-insurance producers to obtain personal property insurance coverage. During that time, Beverly Thomas, assistant vice president of Mesirow, provided insurance consulting and brokerage services to plaintiffs. Among the coverage procured on plaintiffs' behalf during this period of time was private collections coverage obtained from American International Insurance Company (AIG). Among the items of valuable personal property listed on a schedule of covered items was a set of diamond earrings valued at approximately $80,000. The total number of items listed on the schedule of personal property was approximately 100 or more items.

¶ 8                                    A. First Insurance Claim

¶ 9        Plaintiffs' amended complaint alleges that, in late 2004, plaintiffs informed defendants that they had lost one of the covered earrings. As a result, defendants submitted a claim to AIG under the private collections coverage in the policy and that claim was paid. Plaintiffs then purchased a replacement earring identical to the lost earring.

¶ 10       Plaintiffs further allege that, in 2005, through the acts of Thomas, defendants directed AIG to remove the covered earrings from the schedule of covered items without plaintiffs' knowledge or consent. Plaintiffs later obtained a renewal policy with AIG through another producer. At that time, plaintiffs were under the belief that the earrings were covered. Plaintiffs further allege that defendants did not inform them that, when they used the insurance proceeds to purchase an identical replacement earring, the earring would constitute a new "item" that would require a separate listing on a schedule in order for the earrings to have continued coverage.

¶ 11       Plaintiffs allege that, when they renewed the AIG policy, they took reasonable steps to verify that the items they had subsequently acquired were added to a new schedule and the items that they no longer possessed were removed from the schedule.[3]

¶ 12                                   B. Second Insurance Claim

¶ 13       Plaintiffs' amended complaint alleges that, in 2009, approximately four years after the

---

[2]MFH and MIS are collectively referred to as Mesirow.

[3]Plaintiffs do not allege that they informed defendants or their new insurance broker of their purchase of the replacement earring.

relationship between plaintiffs and defendants had terminated,[4] plaintiffs lost both earrings, including the replacement earring. In connection with that loss, plaintiffs submitted a claim to AIG through their new insurance producer. AIG denied the claim on the basis that the earrings were not covered because they were not listed on a schedule of covered items under the 2009 policy. Plaintiffs further allege that it was only in connection with the preparation and submission of the 2009 claim that they learned for the first time that the earrings were not covered.

¶ 14                               III. Procedural History

¶ 15                    A. Original Complaint and Motion to Dismiss

¶ 16        When the trial court granted the motion to dismiss plaintiffs' original complaint for failure to state a cause of action, the trial court found in pertinent part:

> "By Plaintiffs' own allegations, Defendants were not the broker that procured the policy under which they made a claim. Plaintiffs allege that Defendants' fiduciary duty to Plaintiff continues even after the relationship ends. Plaintiffs, however, do not allege facts in support of a continuing requirement. Additionally, even if all allegations in the complaint are true *** Plaintiffs have failed to allege how the actions of deletion during a prior policy impacted or damaged Plaintiffs in subsequent policies procured [by] another insurance broker."

¶ 17        As noted, the trial court dismissed the original complaint without prejudice and granted plaintiffs leave to replead.

¶ 18                    B. First Amended Complaint and Motion to Dismiss

¶ 19        In plaintiffs' amended complaint, they allege that defendants breached their duty to plaintiffs in that defendants:

> "a. Caused and/or directed the earrings to be deleted as a covered item from the schedule without first informing [plaintiffs] that because of the loss of one of the Earrings, the Earrings would no longer be a covered item, even if [plaintiffs] obtained a replacement that appeared to be a replica of the lost Earring and had the same replacement value as the lost Earring;
>
> b. Failed to inform [plaintiffs] that if they obtained a replacement Earring, that they would need to take the necessary steps, including informing their insurance broker of that acquisition, so that the new set of Earrings would be included on the Schedule to which the Coverage was to apply; and
>
> c. Failed to verify with [plaintiffs] that they had received from AIG an endorsement to their existing Coverage informing them that the Earrings, as originally listed on the Schedule, had been removed as a covered item."

---

[4]Termination is "the cancellation of the relationship between an insurance producer and the insurer or the termination of a producer's authority to transact insurance." 215 ILCS 5/500-10 (West 2004).

¶ 20    Plaintiffs further allege that, "[b]ut for [defendants'] breach of its duty of care, the Earrings (including the replacement Earring) would have remained an item for which insurance was provided under the Coverage."

¶ 21    After briefing by both parties, defendants moved to dismiss plaintiffs' amended complaint. When the trial court granted the motion with prejudice for failure to state a cause of action, the trial court found the following:

> "Plaintiffs have not [alleged] and are unable to allege that the fiduciary duty of Defendants extended past the dates that they procured the policy. Further, Plaintiffs have not [alleged] and are unable to allege that the removable from the schedule of the lost item in 2005 proximately caused the damage incurred by the loss of another set of earrings in 2009 under a different year of the policy procured by a different broker."

¶ 22    Plaintiffs filed this timely appeal.

¶ 23                                ANALYSIS

¶ 24    On appeal, plaintiffs argue that the trial court erred in granting the motion to dismiss with prejudice because the amended complaint alleges facts sufficient to demonstrate that defendants owed a duty to plaintiffs and that defendants' breach proximately caused plaintiffs' damages.

¶ 25    Defendants argue that, even if the factual allegations of the amended complaint are taken as true and viewed in the light most favorable to plaintiffs, the amended complaint does not state a cause of action. Defendants argue that the scope of their duty was not so broad as to include future policies not procured by them.

¶ 26                          I. Standard of Review

¶ 27    In reviewing the propriety of a dismissal for failure to state a cause of action pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)), we must determine whether the complaint, when viewed in the light most favorable to plaintiffs, alleges sufficient facts to establish a cause of action upon which relief could be granted. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47 (1991). In reviewing the sufficiency of a complaint, all well-pled facts and reasonable inferences that may be drawn from those facts are accepted as true. *Brewster v. Rush-Presbyterian-St. Luke's Medical Center*, 361 Ill. App. 3d 32, 35 (2005). A cause of action will be dismissed on the pleadings only where it clearly appears that the plaintiff cannot prove any set of facts that would entitle it to relief. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). Further, if the complaint does not state a cause of action, a court may dismiss only if that deficiency may not be cured. *Beckman v. Freeman United Coal Mining Co.*, 123 Ill. 2d 281, 287 (1988).

¶ 28    When we review a circuit court's ruling on defendants' section 2-615 motion to dismiss, we apply a *de novo* standard of review. *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). We may affirm on any basis appearing in the record,

whether or not the trial court relied on that basis or whether its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 29                                    II. Plaintiffs' Breach of Duty Argument

¶ 30    We address plaintiffs' claim that defendants owed a duty and that the breach of that duty proximately caused plaintiffs' damages. Specifically, plaintiffs argue that defendants proximately caused plaintiffs' 2009 loss when they unilaterally deleted the earrings from the schedule in 2005 without first obtaining plaintiffs' consent and without notifying plaintiffs of the deletion.

¶ 31    The relationship between an insured and his broker or producer, acting as the insured's agent, is a fiduciary one. *AYH Holdings, Inc. v. Avreco, Inc.*, 357 Ill. App. 3d 17, 32 (2005). To state a claim for breach of fiduciary duty, plaintiffs must allege: (1) that a fiduciary duty existed; (2) that the fiduciary duty was breached; and (3) that the breach proximately caused damages. *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 313 (2002). An insurance broker or producer is required to inform an insured of all material facts within his knowledge and is to exercise reasonable skill and diligence, cannot mislead the insured, and may be liable for damages resulting from a breach of that fiduciary duty. *Prime Leasing, Inc.*, 332 Ill. App. 3d at 313.

¶ 32    A fiduciary relationship and the attendant duties can arise as the result of the special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former. *Prime Leasing, Inc.*, 332 Ill. App. 3d at 313. "The relationship may arise as a matter of law, such as between agent and principal, or it may be moral, social, domestic, or personal based upon the particular facts." *Citicorp Savings of Illinois v. Rucker*, 295 Ill. App. 3d 801, 809 (1998). The burden of proving the existence of a fiduciary relationship lies with the party seeking to establish it. *Citicorp Savings of Illinois*, 295 Ill. App. 3d at 809.

¶ 33    In the case at bar, the trial court determined that plaintiffs were unable to allege that a fiduciary duty extended past the dates that defendants procured a policy for them. In other words, the duty ceased when plaintiffs renewed their policy through another producer. Further, the trial court also determined that plaintiffs are unable to allege that the removal of the item from the schedule in 2005 proximately caused the damage incurred by the loss of another set of earrings in 2009.

¶ 34                                              A. Fiduciary Duty

¶ 35    Pursuant to the Illinois insurance placement liability section of the Code of Civil Procedure (735 ILCS 5/2-2201(a) (West 2004)), the law provides a statutory duty for an insurance broker. The broker shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured. The statutory duty basically codified the duty of a broker under the common law. Under Illinois law, an insurance broker is an agent of the insured and is required to exercise reasonable skill and diligence in the transaction of business entrusted to him, and will be responsible to his principal for any loss resulting from his failure to do so. *Economy Fire & Casualty Co. v.*

*Bassett*, 170 Ill. App. 3d 765, 772 (1988).

¶ 36    An insurance broker's duty in procuring insurance on behalf of a client is to faithfully negotiate and procure an insurance policy according to the wishes and requirements of the client. *Pittway Corp. v. American Motorists Insurance Co.*, 56 Ill. App. 3d 338, 346-47 (1977). Whether a legal duty exists is a question of law to be determined by the court. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990).

¶ 37    In the case at bar, plaintiffs argue that defendants owed a duty to plaintiffs in 2005 to have kept coverage on the earrings. Plaintiffs further argue that this duty extended to 2009 when they lost both earrings and learned that the earrings were wrongfully excluded from coverage. Plaintiffs also argue that the amended complaint pleads facts from which a jury could conclude that plaintiffs were reasonable in their belief that the earrings remained a covered item on the schedule after the 2005 claim.

¶ 38    However, defendants owed a duty only with respect to a specific policy, for a specific policy period. 735 ILCS 5/2-2201(a) (West 2004). They owed a duty only for a policy that they procured. It is the insured's responsibility to advise his insurance broker of his insurance needs. 735 ILCS 5/2-2201(a) (West 2004). Plaintiffs' argument attempts to broaden the statutorily defined duty of an insurance broker so that it would include responsibility for a policy that the broker did not obtain. There is no allegation in plaintiffs' amended complaint that plaintiffs informed defendants or even their subsequent insurance producer of their purchase of the replacement earring. 735 ILCS 5/2-2201(a) (West 2004). When plaintiffs received their renewal policy, items that were covered were listed in a schedule, and if something was not on that schedule, it was plaintiffs' responsibility to advise their new producers.

¶ 39    An insurance broker's duty is not so broad as to encompass all insurance matters for the foreseeable future when the insured retains a new broker. Rather, the broker owes a duty only with respect to those matters for which its services were retained. 735 ILCS 5/2-2201(a) (West 2004). In addition, an insurance broker owes no duty other than to act with ordinary care in renewing, procuring, binding or placing coverage of the requested type and for the requested time period. 735 ILCS 5/2-2201(a) (West 2004).

¶ 40    In *Melrose Park Sundries, Inc. v. Carlini*, 399 Ill. App. 3d 915, 920 (2010), this court addressed an argument for the expansion of an insurance producer's statutorily limited duty similar to that made by plaintiffs in this case. *Melrose Park Sundries, Inc. v. Carlini*, 399 Ill. App. 3d 915, 920 (2010). As did the trial court in this case, we rejected the proposed expansion of the statutory duty. *Carlini*, 399 Ill. App. 3d at 920.

¶ 41    In *Carlini*, the plaintiff owned a liquor store and sought an insurance broker's assistance in procuring insurance coverage for the store. *Carlini*, 399 Ill. App. 3d at 917. The plaintiff did not specifically request workers' compensation insurance and received a business liability policy but did not obtain workers' compensation coverage. After a store employee was injured on the job, the owner filed an action against the insurance producer. *Carlini*, 399 Ill. App. 3d at 918.

¶ 42    The trial court granted summary judgment on the insurance broker's motion, finding that the producer owed no duty to procure workers' compensation insurance when the owner did

-7-

not request it. *Carlini*, 399 Ill. App. 3d at 918. We affirmed, holding that an insurance producer's duty to procure insurance for a client is predicated on section 2-2201(a) and "[the insurance producer] had a duty to exercise ordinary care and skill in procuring the coverage requested by [the insured]." (Emphasis omitted.) *Carlini*, 399 Ill. App. 3d at 920. We determined that the insurance producer had no duty to obtain additional insurance that was not requested, nor was he obligated to offer advice regarding the need for the insurance because the plaintiff had not inquired about or requested workers' compensation coverage. *Carlini*, 399 Ill. App. 3d at 920. "To hold [the insurance producer] responsible for insurance coverage beyond that requested by [the insured] would extend the duty of ordinary care beyond that expressly defined by the legislature." *Carlini*, 399 Ill. App. 3d at 920.

¶ 43       Similar to *Carlini*, plaintiffs here seek to extend an insurance producer's duties to include a responsibility with respect to coverage beyond that which the producer was requested to procure. In *Carlini*, the plaintiff brought an action against an insurance producer because he was not provided workers' compensation coverage, even though the plaintiff did not request that coverage. In the case at bar, plaintiffs are attempting to extend coverage to a set of diamond earrings in 2009 when defendants were not the producers on a renewal policy.

¶ 44       Plaintiffs' theory of liability is premised upon the argument that even though defendants' obligations to renew, procure, bind or place coverage ceased after the 2005 term, defendants could still be liable for errors in a new policy procured by a subsequent producer. However, defendants' duty terminated when plaintiffs obtained a new producer who procured a new policy. 215 ILCS 5/500-10 (West 2004). Where an insurance producer is retained to procure a specific coverage for a specific time period, its duties go no further than exercising ordinary care in performing those tasks during that period of time. 735 ILCS 5/2-2201(a) (West 2004). Thus, the duty of an insurance producer with respect to policies or coverage that the producer was not asked to renew, procure, bind or place on behalf of the proposed insured cannot be extended and is confined to the specific coverage the producer was retained to obtain.

¶ 45                                    B. Proximate Causation

¶ 46       In order to recover in a negligence action, plaintiff must allege a duty, a breach, proximate cause and damages. *Metrick v. Chatz*, 266 Ill. App. 3d 649, 654 (1994).

¶ 47       In the case at bar, plaintiffs argue that defendants breached duties with respect to the 2005 policy and that these breaches proximately caused the replacement earring to be an uncovered item under a 2009 policy. We do not find this argument persuasive for two reasons. First, plaintiffs' theory of potential liability assumes a duty greater than that imposed by law. Under section 2-2201(a) and the facts of this case, defendants had no duty to provide plaintiffs with information for the purpose of protecting them from obtaining inappropriate coverage for terms after 2005. 735 ILCS 5/2-2201(a) (West 2004). Second, plaintiffs' amended complaint does not allege facts that would show that defendants' alleged negligence proximately caused plaintiffs' claimed damages. In other words, the proximate cause of plaintiffs' damages cannot be defendants' negligence in a previous insurance policy when a different producer procured the renewal policy. It is too remote in time.

¶ 48       An insurance broker's breach of duty with respect to the coverage for the requested

-8-

policy period is not a proximate cause of losses not covered during a different policy period. *Omni Overseas Freighting Co. v. Cardell Insurance Agency*, 78 Ill. App. 3d 639, 644-45 (1979). In *Omni*, the defendant insurance broker appealed a judgment awarding the plaintiff insured damages relating to uncovered losses arising in October 1973. *Omni*, 78 Ill. App. 3d at 644-45. The defendant argued that it was requested to procure a policy with an effective date of October 1973. *Omni*, 78 Ill. App. 3d at 644-45. The defendant also argued that its failure to properly procure a policy could not have proximately caused a lack of coverage for the loss that occurred prior to the effective date of the requested policy, although it had been asked to procure the coverage before the subject loss occurred. *Omni*, 78 Ill. App. 3d at 644. The court determined that the defendant could not be liable for a loss that would not have been covered by the requested policy, and the judgment was reduced to eliminate the damages arising from the October 1973 loss. *Omni*, 78 Ill. App. 3d at 645.

¶ 49     In the case at bar, we note that the 2009 policy set forth the scope of plaintiffs' insurance policy coverage procured by the new producer, and that plaintiffs should have been aware as to the extent of that coverage. Illinois law places a burden on the insured to know its needs for coverage and the contents of its insurance policies. *Cleary v. Country Mutual Insurance Co.*, 63 Ill. App. 3d 637, 638 (1978). Furthermore, section 5/2-2201(a) establishes that an insurance producer's duty ceases generally once the insurance broker has obtained the requested coverage. 735 ILCS 5/2-2201(a) (West 2004); *Land v. Greenwood*, 133 Ill. App. 3d 537, 541 (1985).

¶ 50     Any failure by defendants to take ordinary care with respect to the procurement of insurance for the 2002 through 2005 policy terms could not have proximately caused plaintiffs' damages. Thus, plaintiffs are unable to allege facts that would show that the removal of an item from a schedule in 2005 proximately caused the alleged damages incurred by the loss of another set of earrings in 2009.

¶ 51                                                    CONCLUSION

¶ 52     For the reasons set forth above, defendants-insurance producers owed no duty to plaintiffs in 2009 when the alleged loss occurred because their duty ceased when plaintiffs obtained a renewal policy through another producer. We also find that the alleged breach, the removal of the expensive earrings in 2005 by defendants, did not proximately cause plaintiffs' damages in 2009. The scope of defendants' duty did not extend to future policies not procured by defendants.

¶ 53     Affirmed.